*NOT FOR PUBLICATION*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MICROBILT CORPORATION, | : | |
| | : | |
| Debtor/Plaintiff, | : | |
| | : | |
| v. | : | Adv. Pro. No. 11-02488 (MBK) |
| | : | Civ. Action No. 14-03284 (FLW) |
| FIDELITY NAT'L INFO. SERVS., INC. | : | |
| CHEX SYS., INC., *and* | : | OPINION |
| FIS MGMT. SERVS., LLC, | : | |
| | : | |
| Defendants. | : | |

**WOLFSON, United States District Judge:**

Presently before the Court are (1) a motion by Defendants Fidelity National Information Services, Inc. ("FNIS), Chex Systems, Inc. ("Chex"), and FIS Management Services, LLC ("FIS") (collectively, "Defendants") to withdraw the reference of this matter to the United States Bankruptcy Court for the District of New Jersey and (2) a cross-motion by Plaintiff MicroBilt Corporation's ("MicroBilt," or "Plaintiff") for a jury trial pursuant to Rule 39(b) of the Federal Rules of Civil Procedure. Upon the review of parties' papers and the relevant case law and for the following reasons, the Court grants Defendants' motion and denies Plaintiff's motion.

**I. Background**

This is Defendants' second motion to withdraw the reference of this matter. The first motion was denied without prejudice by the Honorable Joel A. Pisano in 2012. *MicroBilt Corp. v. Fid. Nat. Info. Servs.*, No. CIV.A. 12-3861 JAP, 2012 WL 4955267, at *4 (D.N.J. Oct. 16, 2012). As such, this Court incorporates Judge Pisano's comprehensive statement of the facts herein. Briefly, this motion to withdraw the reference arises out of an ongoing bankruptcy proceeding in the

1

bankruptcy court, initiated by MicroBilt's voluntary petition for relief under Chapter 11 of the bankruptcy code. *Id.*; *see also In re MicroBilt* Corp., 484 B.R. 56, 61 (D.N.J. 2012). Chex filed a proof of claim in the underlying bankruptcy case relating to pre-petition amounts MicroBilt purportedly owed related to an Information Resale Agreement, dated August 26, 2009, between MicroBilt and Chex (the "Resale Agreement").[1] *Id.*

Both Chex and MicroBilt filed motions to resolve the dispute over the Resale Agreement with the bankruptcy court; the Honorable Michael B. Kaplan, U.S.B.J., entered an order resolving certain issues in MicroBilt's favor but found MicroBilt in default of the Resale Agreement and directed MicroBilt to cure the amount owed.[2] *Id.*

On October 18, 2011, MicroBilt commenced an adversary proceeding in bankruptcy court against FNIS and Chex. The Second Amended Complaint alleges two causes of action: in Count One, tortious interference with prospective contractual relations (lost investors); and in Count Two, trade libel/commercial disparagement/slander/libel. *See* Docket No. 37, Case 11-02488-MBK. MicroBilt's claims are premised on Defendant's purported accusations that MicroBilt engaged in "data caching" (*i.e.*, the wrongful storage and re-use of consumer credit information). *Id.*

On June 22, 2012, Defendants filed (1) their first motion for withdrawal of the reference and (2) a motion for determination of core and non-core proceedings in the bankruptcy court. On August 5, 2012, Judge Kaplan issued an order regarding the core and non-core proceedings,

---

[1] MicroBilt is a customer credit information reseller and Chex is a consumer credit information supplier. Docket No. 37, Case 11-02488-MBK.

[2] Microbilt and Chex's dispute over the Resale Agreement is ongoing. Chex appealed Judge Kaplan's order to the Honorable Michael A. Shipp, U.S.D.J., who remanded the pricing issue to Judge Kaplan. Judge Kaplan modified his pricing decision in accordance with Judge Shipp's rulings, and MicroBilt appealed the modified decision to Judge Shipp. On October 31, 2014, Judge Shipp affirmed the findings and determinations of the Bankruptcy Court. Docket No. 28, 14-00750-MAS. On November 26, 2014, MicroBilt filed a Notice of Appeal to the Third Circuit as to Judge Shipp's Order and Opinion. Docket No. 30, 14-00750-MAS.

2

finding that MicroBilt's claims against any defendant who has filed a proof of claim in this bankruptcy court are core proceedings and any other claims are non-core; further, "the [bankruptcy] Court lacks the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim."[3] Docket No. 27, Case 11-02488-MBK.

On October 16, 2012, Judge Pisano denied Defendants' motion without prejudice, finding at the time that withdrawal of the reference was not warranted because "[t]he Bankruptcy Court has familiarized itself with the parties, their relationships and their various disputes and is uniquely situated to address the outstanding issues in this case, as well as to manage issues related to discovery and any potential settlement discussions." *MicroBilt Corp.*, 2012 WL 4955267, at *4. However, Judge Pisano reserved judgment on Defendant's contention that the Bankruptcy Court does not have the constitutional authority to finally adjudicate the claims in the adversary proceeding because the proceeding was in its early stages and "even if the District Court ultimately must adjudicate the matter, the Bankruptcy Court is currently in the best position to preside over the Adversary Proceeding and resolve motions and discovery disputes until such time as the case is ready for final adjudication." *Id.* Judge Pisano concluded that "[i]f, after the Bankruptcy Court has resolved all discovery and pre-trial issues, there are remaining claims over which the Bankruptcy Court lacks authority, Defendants may then move to withdraw the reference under a new civil action number." *Id.*

On April 28, 2014, soon after the third amended joint scheduling order was issued in the Bankruptcy Court, Defendants filed a second motion for withdrawal of reference. On September 26, 2014, Defendants filed separate motions for summary judgment. Docket Nos. 66, 67, Case 11-

---

[3] Chex filed a proof of claim in the underlying bankruptcy proceeding; FNIS and FIS did not. *See supra* page 2.

02488-MBK. On October 1, 2014, Judge Kaplan stayed the adversary proceeding pending the resolution of this motion to withdraw. Docket No. 73, Case 11-02488-MBK.

**II.   Discussion**

     *a.   Withdrawal of the Reference*

Title 28 U.S.C. § 157(d) provides: "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d).

According to 28 U.S.C. § 157(d), there are two forms of withdrawal—mandatory and permissive. Courts in this jurisdiction have held that a withdrawal of reference is mandatory if the "resolution of the proceeding requires a *substantial and material* consideration of both Title 11 and non-code Federal law." *In Re Anthony Tammaro, Inc.,* 56 B.R. 999, 1006-07 (D.N.J. 1986) (emphasis in original); *see also, e.g.*, *Doctors Assocs., Inc. v. Desai*, No. CIV.A.10-575, 2010 WL 3326726, at *4 (D.N.J. Aug. 23, 2010). Conversely, 28 U.S.C. § 157(d) provides that permissive withdrawal is appropriate "for cause shown." What constitutes "cause" to withdraw is not evident from the statute, *see NDEP Corp. v. Handl–It, Inc.* (*In re NDEP Corp.*), 203 B.R. 905, 907 (D.Del.1996) (citing *In re Pruitt,* 910 F.2d 1160, 1168 (3d Cir.1990)), but courts in the Third Circuit and elsewhere have articulated a number of factors for the District Court to consider, including (1) whether the proceeding is core or non-core, (2) judicial efficiency, (3) uniformity and economy, and (4) discouraging forum shopping. *See In re Pruitt,* 910 F.2d at 1168; *Prof'l Ins. Mgmt. v. Ohio Cas. Group of Ins. Cos. (In re Prof'l Ins. Mgmt.),* 2000 WL 679247, at *5 (D.N.J.

4

May 25, 2000); *Times Mirror Magazines v. Las Vegas Sports News, L.L.C.,* 1999 WL 179749, at *2 (E.D.Pa.1999).

Importantly, courts in this district have held that a threshold factor in determining whether the district court should withdraw a reference is whether the proceeding is "core" or "non-core" to the pending bankruptcy case; only after such a determination is made will a court consider the remaining factors when deciding whether to withdraw a reference for cause. *See Feldman v. ABN AMRO Mortgage Grp. Inc.*, 515 B.R. 443, 451 (E.D. Pa. 2014) (analyzing whether the adversary proceedings in question were "core" to the larger bankruptcy proceeding before proceeding to consider the non-exclusive factors in *In re Pruitt*). 27 U.S.C. § 157(b)(2) provides a non-exhaustive list of core proceedings, including "counterclaims by the estate against persons filing claims against the estate." 28 U.S.C. 157(b)(2)(C).

So-called *Stern* claims, which include state law counterclaims that are not resolved by ruling on a creditor's proof of claim and over which bankruptcy courts lack jurisdiction under Article III of the Constitution, should be treated as non-core claims.[4] *See Stern v. Marshall,* 564 U.S. —, 131 S.Ct. 2594, 2608 (2011); *see also Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2173 (2014) (instructing courts to adjudicate *Stern* claims as non-core claims). "[I]n 'noncore' proceedings, the Bankruptcy Court's adjudicatory power is limited to hearing the dispute and submitting proposed findings of facts and conclusions of law to the district court. The District Court, after considering the Bankruptcy Court's proposed findings and conducting a *de novo*

---

[4] The Supreme Court has cautioned that *Stern* concerns only a narrow class of bankruptcy claims. *Stern v. Marshall*, 131 S. Ct. 2594 (2011). ("We do not think the removal of counterclaims such as [the petitioner's] from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute; we agree with the United States that the question presented here is a 'narrow' one.").

review of any matter objected to therein, enters final orders and judgments in 'non-core' proceedings. *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999) (internal quotations omitted).

The remaining factors of permissive withdrawal analysis, grounded in the interests of judicial economy, address whether withdrawal would: (1) promote uniformity in bankruptcy administration; (2) reduce forum shopping and confusion; (3) foster the economical use of the debtors' and creditors' resources; and (4) expedite the bankruptcy process. *In re Pruitt,* 910 F.2d at 1165.

The parties do not dispute that Defendant's motion to withdraw the reference should be examined under the permissive, not mandatory, withdrawal analysis.[5] Therefore, I begin by analyzing the threshold issue for permissive withdrawal: whether the adversary proceedings are core or non-core. Based on Judge Kaplan's order on the core/non-core nature of the adversary proceedings, it appears that MicroBilt's claims against Chex, which had filed a proof of claim in the underlying bankruptcy proceedings, were core proceedings, but MicroBilt's claims against FIS and FNIS, both of which had not filed proofs of claim in the underlying bankruptcy, were non-core proceedings. Docket No. 27, Case 11-02488-MBK. Additionally, Judge Kaplan included language in his order following the holding in *Stern*, noting that the bankruptcy court "lacks the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Id.*

Defendants argue that MicroBilt's claims against Chex are non-core because they do not relate to Chex's proof of claim in the underlying bankruptcy proceeding; Chex's proof of claim relates to the Resale Agreement between MicroBilt and Chex, whereas MicroBilt's claims in the adversary proceeding relate to allegedly false statements Chex and the other Defendants made

---

[5] *See* Defs.' Brief; Pl.'s Opp. Brief; Defs.' Reply Brief.

about MicroBilt engaging in "data-caching." Alternatively, Defendants argue that MicroBilt's claims against Chex are, like the tortious interference counterclaim in *Stern*, "state law action[s] independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy." *Stern*, 131 S. Ct. at 2611. Thus, the bankruptcy court lacks jurisdiction to issue a final judgment on the claims and they should be treated as non-core. *Id.*; *Executive Benefits Ins. Agency*, 134 S. Ct. at 2173.

The Court agrees with, and will not disturb, Judge Kaplan's determination that Plaintiff's claims against any defendant who has filed a proof of claim in this bankruptcy court—*i.e.*, Chex— are core proceedings, while Plaintiff's claims against FIS and FNIS are non-core proceedings. *See* Docket No. 27, Case 11-02488-MBK. However, Plaintiff and Defendants do not dispute that Judge Kaplan made his determination on the basis that Plaintiff's claims against Chex are essentially "counterclaims by the estate against persons filing claims against the estate,"[6] the category of core proceedings described in Section 157(b)(2)(C) and at issue in *Stern*. 28 U.S.C § 157(b)(2)(C); *Stern*, 131 S. Ct. 2594. Plaintiff's claims—tortious interference with contractual relations and trade libel/commercial disparagement/slander/libel—are also indisputably state law claims. *See* Docket No. 37, Case 11-02488-MBK. Finally, Plaintiff does not dispute Defendants' contention that Plaintiff's claims in the adversary proceeding, which relate to false statements Defendants allegedly made about Plaintiff engaging in "data caching," are factually unrelated to Chex's proof of claim in the underlying bankruptcy proceeding, which relates to the Resale Agreement between Plaintiff and Chex. Thus, necessarily Plaintiff's claim against Chex will not be disposed of upon the resolution of Chex's proof of claim. *See* Pl.'s Reply Brief.

---

[6] Pl.'s Opp. At 3; Defs.' Reply at 6.

Therefore, I find that Plaintiff's claims against Chex are *Stern* claims. It follows that the bankruptcy court lacks jurisdiction over such claims, and the claims should be treated as non-core proceedings. Thus, the entire adversary proceeding at issue is a non-core proceeding and is subject to *de novo* review by the district court, weighing in favor of granting the motion to withdraw the reference. *In re G-I Holdings, Inc.*, 295 B.R. 211, 217 (D.N.J. 2003) ("Efficiency [will be] enhanced by withdrawal of the reference if non-core issues predominate.").

Now, I turn to the remaining factors of the permissive withdrawal analysis. Given my determination that the adversary proceeding is non-core, the remaining factors also weigh in favor of withdrawing the reference. Allowing the district court to decide the adversary proceeding would promote uniformity, judicial economy and expediency—the first and third factors as delineated in *Pruitt*. Admittedly, the presiding bankruptcy judge has more familiarity with the facts at issue in this case and has guided these proceedings through the pre-trial stages; however, that familiarity is outweighed by the economy of the district court deciding this case in the first instance instead of having the bankruptcy court submit proposed findings of fact and conclusions of law and the district court then engaging in *de novo* review, including the parties submitting briefing at both stages. *See, e.g.*, *In re NDEP Corp.*, 203 B.R. 905, 913 (D. Del. 1996).

As for the second factor relating to forum shopping and confusion, both Defendants and Plaintiff accuse each other of engaging in forum shopping by supporting and opposing this motion to withdraw, respectively. The Court finds that this factor is neutral. At any rate, withdrawing the reference would not *promote* forum shopping, since I find unpersuasive Plaintiff's argument that Defendants seek to withdraw the reference because Defendants are displeased by Judge Kaplan's

decisions (1) resolving Chex's proof of claim under the Resale Agreement in the underlying bankruptcy proceeding and (2) Defendants' motions to dismiss in the adversary proceeding.[7]

The fourth factor, which examines whether withdrawal of the reference would expedite the underlying bankruptcy proceeding, is irrelevant. As stated above, the adversary proceeding's issues have no bearing on the outcome of the underlying bankruptcy proceeding and Plaintiff does not contest Defendants' argument that the underlying bankruptcy proceeding has nearly been completed and Plaintiff's reorganization plan substantially consummated. *See* Defs.' Brief at 18; Pl.'s Opp. Brief.

Accordingly, the Court finds "cause shown"[8] to grant Defendants' motion to withdraw the reference.

### b. *MicroBilt's Motion for a Jury Trial*

In the alternative, MicroBilt has cross-moved for a jury trial under Rule 39(b) of the Federal Rules of Civil Procedure. Generally, a party moves for a jury trial on any triable issue under Rule 38(b) of the Federal Rules of Civil Procedure; the motion must be contained in a written demand

---

[7] Indeed, as Defendants point out, Judge Kaplan has issued favorable rulings for Defendants in the above-cited decisions. Judge Kaplan found that MicroBilt was in default under the Resale Agreement and accordingly ordered MicroBilt to make cure payments to Chex. *In re MicroBilt* Corp., 484 B.R. 56, 61 (D.N.J. 2012). Further, Judge Kaplan granted, in part, Defendants' motions to dismiss MicroBilt's claims in the adversary proceedings.

[8] There are two other factors courts often analyze in determining whether "cause" for permissive withdrawal exists—the timing of the motion to withdraw and whether a jury trial has been requested. *Grigg v. Chaney*, No. CIV.A. 3:13-292, 2014 WL 5823108, at *6 (W.D. Pa. Nov. 10, 2014) ("The Third Circuit has observed that there is an implicit timing element in considering motions for withdrawal . . . ."); *Feldman*, 515 B.R. at 446 ("Courts also consider whether a jury trial has been requested.") (citing to *Pennsylvania Acad. of Music v. Regitz,* 2010 WL 4909952 (E.D.Pa. Nov. 30, 2010)).

Here, Defendants' motion is timely. The motion was filed in accordance with the scheduling order deadlines as well as Judge Pisano's order on Defendants' first motion to withdraw the reference. Further, Plaintiff's request for a jury trial is irrelevant to the "cause shown" analysis because the Court denies Plaintiff's request for a jury trial. *See infra* at 11.

served on the other party "no later than 14 days after the last pleading directed to the issue is served." FED. R. CIV. P. 38(b).

However, Rule 39(b) governs when a proper jury demand under Rule 38 has not been made. In such an instance, "the court may, on motion, order a jury trial on any issue for which a jury might have been demanded." *Id.* 39(b). Courts consider the following factors in determining whether to grant an untimely jury demand: "1) whether the issues are suitable for a jury; 2) whether granting the motion would disrupt the schedule of the Court or the adverse party; 3) whether any prejudice would result to the adverse party; 4) how long the party delayed in bringing the motion; and 5) the reasons for the failure to file a timely demand." *U.S. S.E.C. v. Infinity Grp. Co.*, 212 F.3d 180, 195-96 (3d Cir. 2000). A trial court's decision on whether to grant a jury demand under Rule 39(b) is reviewed under an abuse of discretion standard. *Id.*

Here, the discretionary factors articulated by the Third Circuit weigh against granting Plaintiff's untimely jury demand. While Plaintiff's state law claims may be suitable for a jury,[9] granting Plaintiff's jury demand at this late stage of the litigation would be disruptive to both the Court and the parties as well as prejudice Defendants. At this point, discovery has been completed, the dispositive motion deadlines have passed, and both parties could potentially incur additional expenses and engage in further discovery to adequately prepare for a jury trial. *See, e.g.*, *Katzenmoyer v. City of Reading,* No. Civ. A. 00–CV–5574, 2001 WL 1175139, at * 1 (E.D.Pa. Aug. 6, 2001*)* (The parties have "already made strategic decisions with respect to the scope of discovery based on the assumption of a bench trial.").

---

[9] However, the Court notes that Plaintiff does not cite any facts or law for the proposition that Plaintiff's claims of tortious interference and trade libel/commercial disparagement/slander/libel are *particularly* suitable issues to be tried by a jury; Plaintiff merely and cursorily states that "Plaintiff has brought non-core state law claims. The Defendants cannot dispute that each such claim is suitable for a jury trial. "Pl.'s Opp. Brief at 11. *See Infinity Grp. Co.*, 212 F.3d 180, 196 (3d Cir. 2000) ("We agree that the defendants did not make an adequate showing that the issues involved in this case were particularly suitable for a jury.").

10

Further, Plaintiff waited more than two and a half years after filing this adversary proceeding to request a jury trial, a delay many other courts have found excessive under Rule 39(b) analysis. *E.g.*, *In re Inacom Corp.*, No. 00-02426 (PJW), 2005 WL 2148563, at *4 (D. Del. Sept. 6, 2005) (finding a delay of more than two years excessive); *Katzenmoyer,* 2001 WL 1175139, at *2 (denying Rule 39(b) motion brought three months after the beginning of discovery and four months prior to trial). Finally, Plaintiff's explanation for why it failed to make a jury demand earlier in the adversary proceeding—that "given this case was (and is) pending in the bankruptcy court, Plaintiff was not in a position to make a Rule 38 jury demand"—is unconvincing. *See Inacom Corp.*, 2005 WL 2148563, at *4 (noting that "defendants in adversary proceedings will often file timely demands for a jury trial and, subsequently, move to withdraw the reference to the district court in order to pursue the demand"). Thus, this Court finds the foregoing factors do not warrant granting Plaintiff's motion under Rule 39(b) for a jury trial.

### III. Conclusion

For the reasons stated above, Defendants' motion to withdraw the reference is granted and Plaintiff's motion for a jury trial is denied.

An appropriate order will follow.

Date: December 3, 2014 /s/ Freda L. Wolfson
Freda L. Wolfson, U.S.D.J.